# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Antoinette Mason,                           :
                                            :
                          Petitioner        :
                                            :
              v.                            :  No. 1036 C.D. 2017
                                            :  Submitted: March 8, 2018
Unemployment Compensation                   :
Board of Review,                            :
                                            :
                          Respondent        :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                FILED:  September 28, 2018

Antoinette Mason (Claimant) petitions for review of the June 29, 2017 order of the Unemployment Compensation Board of Review (Board), which held that Claimant was ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]  We affirm.

Claimant worked for Univest Corporation (Employer) from October 31, 2016, through February 24, 2017, as a mortgage loan processor.  On March 10, 2017, Claimant applied for unemployment compensation benefits.  In documents submitted to the local service center, Claimant asserted that she had voluntarily quit for good cause, and Employer claimed that she was discharged for willful

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).  Section 402(e) provides that an employee shall be ineligible for compensation for any week in which her unemployment is due to her discharge from work for willful misconduct connected with her work.

misconduct. By decision mailed April 6, 2017, the service center determined that Claimant was discharged for violating a work rule and was ineligible for benefits under Section 402(e). Claimant appealed, and referee held a hearing on May 2, 2017.

Nicole Dorn testified that she is a human resources generalist for Employer. She said that Claimant contacted her on February 17, 2017, and requested a meeting to discuss a private family matter. Dorn stated that when she met with Claimant on February 21, 2017, Claimant requested a leave of absence in order to take care of her mother, who lived out of state and had stage 4 cancer. Dorn said she contacted Theresa Schwartzer, Employer's director of human resources, and obtained permission for Claimant's leave. She testified that Claimant expressed a desire to leave the following week and last worked for Employer on February 24, 2017. Dorn did not recall that Claimant raised any concerns regarding her treatment at work or problems with her supervisor. Notes of Testimony (N.T.) at 17-19.

Kathleen Smoot, Claimant's supervisor, testified that employees give her access to their email when they are out because Employer's customers submit documentation for their mortgages through email. Smoot stated that, on February 27, 2017, as she was reviewing Claimant's emails, she saw a scanned document attached to an email, opened it, and found an employment contract for Claimant with a start date of March 1, 2017. N.T. at 20.

Smoot said she understood that when Claimant left work on February 24, 2017, Claimant was taking a three-week leave of absence. N.T. at 20-21. Smoot acknowledged that Claimant did not expressly state that she would be returning to work, but she testified that Claimant never complained to her about discrimination or harassment during the preceding three months of her employment. She noted that

Claimant received a verbal warning regarding her job performance on February 17, 2017, which Claimant believed was unfair. She also was aware that in the days preceding her verbal warning, Claimant had met with Michelle Tate, Employer's director of operations, regarding the conduct of another employee. N.T. at 22-24.

Schwartzer testified that Employer's policy prohibits employees from being simultaneously employed by a competitor, and she discharged Claimant for violating that policy. She stated that Claimant signed a copy of the policy and was aware of its terms. Schwartzer explained that Smoot found an employment contract between Claimant and Seckel Capital, a competitor, in Claimant's email on February 27, 2017, while Claimant was on leave. She stated that the employment contract listed Claimant's start date with Seckel Capital as March 1, 2017. Schwartzer said that she spoke with Claimant by phone and asked Claimant if she would be returning to work as scheduled on March 20, 2017. According to Schwartzer, Claimant replied that she would be returning to work and denied that she was working for another company. N.T. at 6-9.

Schwartzer stated that she subsequently called Seckel Capital to verify Claimant's employment status. She explained that Seckel Capital took a few days to confirm Claimant's employment, and after it was confirmed, she terminated Claimant's employment effective February 24, 2017. N.T. at 12, 16.

Employer also offered into evidence copies of emails between Smoot, Schwartzer, Dorn, and Barton Skurbe, the head of Employer's mortgage division, corroborating their testimony that Claimant had taken a leave of absence. *See* Employer's Exhibit 7. Schwartzer acknowledged that Claimant was not copied on any of those emails. N.T. at 10, 15.

3

In contrast to the testimony of Employer's witnesses, Claimant testified that she quit her employment as the result of discrimination. Claimant stated that Smoot ignored her and isolated her from her co-workers, and, when Smoot did speak to her, it was in a condescending tone. Claimant said that Smoot treated her differently from other employees, watched her closely, nitpicked, and did not interact with her. Claimant said she began reporting her concerns to Tate in late December or January. N.T. at 25-27.

Claimant acknowledged that she had received a verbal warning on February 17th for mislabeling something and for being on the telephone. Claimant believed the warning was in retaliation for complaints she made the previous day about having only one loan officer. Claimant explained that loan officers brought in business and that each of her teammates worked with three or four loan officers. She said that she was only assigned to work with one loan officer and consequently she could not reach Employer's business goal. She stated that in her time with Employer, she closed 23 or 24 loans, so her ability to do the work was not an issue, and Smoot told her that she would rearrange some work, but never did.

Claimant also testified that when Employer terminated another employee, the employee's work was redirected to another loan processor who was not African-American. Claimant stated that she was one of only three African-American employees in the office and that only five African American employees were in the office during department meetings. N.T. at 28-29.

Claimant testified that Smoot was aware of her complaints because she and Smoot had meetings with Tate regarding her concerns. Specifically, Claimant said that a day after she complained to Smoot about discriminatory treatment by a co-worker, she received a verbal warning from Smoot about her job performance.

4

She said Smoot informed her that she received the warning because of her attitude toward an underwriter and because she had been on the phone. N.T. at 27-29.

Claimant further testified that the employee whose conduct prompted her meeting with Tate was cursing and carrying on, and she felt like her complaints were falling on deaf ears. Claimant acknowledged that that was when she contacted Dorn to discuss the situation. She did tell Dorn about her mother, but she primarily discussed the everyday stress of being at work. Claimant testified that she never requested a leave of absence. She said that she intended to terminate her employment with Employer after February 24, 2017, and that she informed Smoot of this decision. Claimant agreed that she did not explicitly advise Dorn, Smoot, or Schwartzer that she would quit her job if her employment environment did not change. Claimant also acknowledged that she had a job offer from Seckel Capital prior to leaving her position with Employer, but she insisted that she voluntarily quit her employment because she was unhappy in Employer's work environment. N.T. at 27-32.

By decision dated May 9, 2017, the referee affirmed the service center's denial of benefits. Crediting the testimony of Employer's witnesses, the referee found that Claimant knew or should have known that Employer's policy prohibits outside employment with a competitor. The referee also found that Claimant took a three-week leave of absence, during which Employer discovered that she had signed an employment contract with a competitor to begin employment March 1, 2017, and began employment with the competitor on that date. The referee rejected Claimant's assertions that she voluntarily quit due to ongoing issues with her employment. Consequently, the referee concluded that Employer met its burden of proving willful misconduct and that Claimant failed to demonstrate good cause for her conduct.

5

Claimant appealed to the Board and requested a remand hearing. By order dated June 29, 2017, the Board denied Claimant's request for a remand hearing[2] and affirmed the referee's decision, adopting and incorporating the referee's findings and conclusions. In doing so, the Board stated as follows:

> [Employer's] human resource generalist credibly testified [that] she met with [Claimant] on February 21, 2017, at which time [Claimant] requested a leave of absence to care for [her] terminally ill mother. [Claimant] was approved for up to three weeks off work unpaid or she could use paid leave. [Employer's] processing manager credibly testified that on February 27, 2017, she found an employment agreement in an email on [Claimant's] work computer for [Claimant] to begin employment with Seckel Capital LLC, a competitor, on March 1, 2017. [Employer's] director of human resources credibly testified that on February 27, 2017, she spoke to [Claimant] via telephone and asked [Claimant] if she was employed by another company and if [she] intended to return to work at the end of her three-week leave of absence. [Claimant] stated "how could I possibly be employed if I'm in my mother's living room in Williamsburg" and indicated [that] she was returning to work for [Employer] at the end of her leave of absence. [Claimant's] testimony that she voluntarily quit is not credible.

Board's decision and order, June 29, 2017.

On appeal to this Court,[3] Claimant argues that the Board erred in determining that she was discharged for willful misconduct rendering her ineligible for benefits under Section 402(e) of the Law. Specifically, Claimant again asserts

---

[2] Claimant does not challenge the Board's denial of a remand hearing on appeal.

[3] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether necessary findings of fact are supported by substantial evidence. *Kirkwood v. Unemployment Compensation Board of Review,* 525 A.2d 841, 843-44 (Pa. Cmwlth. 1987).

that she voluntarily quit her employment due to discriminatory treatment and met her burden to prove good cause for resigning her job. Therefore, she contends, the Board should have decided she was not ineligible for unemployment compensation benefits pursuant to Section 402(b) of the Law.[4] We disagree.

The Board is the factfinder in unemployment compensation cases, empowered to determine the credibility of witnesses and resolve conflicts in evidence. *Curran v. Unemployment Compensation Board of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). The Board may reject any testimony, even uncontradicted testimony, that the Board deems not credible or worthy of belief. *Stockdill v. Unemployment Compensation Board of Review*, 368 A.2d 1341, 1343 (Pa. Cmwlth. 1977). On appeal, this Court is bound by the Board's findings so long as there is substantial evidence in the record, taken as a whole, to support them.[5] *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999).

In this case, the Board credited the testimony of Employer's witnesses that Claimant requested a three-week leave of absence and was expected to return to work on March 20, 2017. The Board also credited Schwartzer's testimony that she spoke with Claimant during her leave and that Claimant assured Schwartzer that she intended to return to work. The Board rejected Claimant's testimony that she

---

[4] 43 P.S. §802(b). Section 402(b) provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.

[5] "Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). We view the record in the light most favorable to the party prevailing before the Board and afford that party the benefit of all reasonable inferences that can be drawn from the evidence to determine if substantial evidence exists. *Big Mountain Imaging v. Unemployment Compensation Board of Review*, 48 A.3d 492, 494-95 (Pa. Cmwlth. 2012).

7

informed Employer that she was terminating her employment when she left work on February 24, 2017.

Our review of the record confirms that the Board's findings that Employer discharged Claimant for violating a work rule are supported by substantial evidence. Therefore, the Board properly applied Section 402(e) to determine that Claimant was ineligible for unemployment compensation benefits. Essentially, Claimant is asking this Court to review the evidence and credit her testimony over that offered by Employer. However, because questions of credibility and evidentiary weight are within the sole discretion of the Board and are not subject to reevaluation on judicial review, *Bell v. Unemployment Compensation Board of Review*, 921 A.2d 23, 26 n.4 (Pa. Cmwlth. 2007), Claimant cannot rely on her preferred version of the facts to prevail on appeal.

Accordingly, we affirm the order of the Board.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Antoinette Mason, : 
                                : 
                Petitioner : 
                                : 
             v. : No. 1036 C.D. 2017
                                : 
Unemployment Compensation : 
Board of Review, : 
                                : 
           Respondent : 

## O R D E R

AND NOW, this 28th day of September, 2018, the order of the Unemployment Compensation Board of Review, dated June 29, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge